### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULMAL LEWIS | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  23-2387 |
| | : | |
| RANDY EVANS, THE ATTORNEY | : | |
| GENERAL OF THE STATE OF | : | |
| PENNSYLVANIA, THE DISTRICT | : | |
| ATTORNEY OF PHILADELPHIA | : | |
| COUNTY, PHILADELPHIA | : | |

### <u>MEMORANDUM</u>

**MURPHY, J.**                                              **September 4, 2025**

Before us are Julmal Lewis's objections to Magistrate Judge Hey's report and recommendation denying Mr. Lewis's habeas petition and affirming the Pennsylvania Superior Court's PCRA ruling.  For the reasons explained in this memorandum, we overrule all of Mr. Lewis's objections and adopt Judge Hey's R&R in full.

### I.    <u>Background</u>[1]

On March 9, 2009, following a jury trial in the Philadelphia Court of Common Pleas, Julmal Lewis was sentenced to an aggregate term of nineteen and one-half to thirty-nine years' imprisonment.  The sentence consisted of consecutive terms of ten to twenty years for voluntary manslaughter and seven to fourteen years for aggravated assault, together with a consecutive term of two and one-half to five years for carrying a firearm without a license.  *See Commonwealth v. Lewis*, CP-51-CR-0010116-2007, Order Sentencing (Phil. C.C.P. Mar. 9, 2009); DI 17 at 114.  The convictions arose from the April 28, 2007, shootings of Rasheen Johnson, who was killed, and Omar Ingram, who was wounded.

---

[1] Mr. Lewis does not specifically object to the procedural history provided by Judge Hey in her R&R.  Upon review, we adopt it, and the reader may refer to the R&R for a more detailed description.  *See* DI 21 at 1-7.

Lewis filed a direct appeal but discontinued it on January 19, 2010. *See* DI 17 at 149 (ECF) (*Commonwealth v. Lewis*, No. 837 EDA 2009 (Pa. Super. Jan. 21, 2010) (order granting discontinuance)). He then sought relief under Pennsylvania's Post Conviction Relief Act (PCRA), raising ineffective-assistance claims related to the jury instructions and to sentencing. The PCRA court granted partial relief by ordering resentencing based on an erroneous prior record score, and on October 26, 2012, reimposed the same aggregate sentence. *See id.* at 219 (ECF) (*Commonwealth v. Lewis*, CP-51-CR-0010116-2007 (C.P. Phila. Oct. 26, 2012) (resentencing order)).

Lewis appealed from that resentencing, again attempting to litigate his ineffective-assistance claims. On May 13, 2015, the Pennsylvania Superior Court held that those claims were not cognizable on direct review and affirmed the judgment of sentence. *See Commonwealth v. Lewis*, No. 710 EDA 2013, 2015 WL 7260909, at *2 (Pa. Super. May 13, 2015).

On August 27, 2015, Lewis filed another PCRA petition seeking to reinstate his right to appeal the denial of his ineffective-assistance claims nunc pro tunc. *See* DI 17 at 274 (ECF) (*Commonwealth v. Lewis*, CP-51- CR-0010116-2007, Petition Requesting to Reinstate Appeal Nunc Pro Tunc (Phil. C.C.P. Aug. 27, 2015)). The PCRA court granted relief in February 2020, and Lewis pursued a nunc pro tunc appeal. *See id.* at 290 (ECF). The Superior Court ultimately affirmed the denial of PCRA relief on the merits, concluding that none of Lewis's ineffective-assistance claims warranted relief. *See Commonwealth v. Lewis*, No. 814 EDA 2020, 2022 WL 1132620 (Pa. Super. Apr. 18, 2022). The Pennsylvania Supreme Court later denied allowance of appeal. *See id.* at 393 (ECF) (*Commonwealth v. Lewis*, No. 17 EAL 2023 (Pa. May 26, 2023)).

2

Lewis then filed the present habeas petition under 28 U.S.C. § 2254, raising three ineffective-assistance claims: (1) trial counsel's failure to ensure that the jury was properly instructed on self-defense as to the aggravated assault charge, (2) trial counsel's failure to request an involuntary manslaughter instruction, and (3) appellate counsel's failure to pursue a claim that the trial court erred in overruling an objection to the prosecutor's remarks during closing argument. *See* DI 2; DI 5.

The petition was referred to Magistrate Judge Hey, who issued a R&R, recommending denial of the petition. *See* DI 21. Lewis has filed objections, organized into four groups: general objections and three objections directed to each of his substantive claims. *See* DI 23.

We review de novo those portions of the R&R to which Mr. Lewis has made specific objections. 28 U.S.C. § 636(b)(1). For the reasons that follow, we conclude that none of Lewis's objections has merit. Accordingly, we will adopt the R&R, overrule the objections, and deny the petition.

## II.    <u>Legal standard</u>

When a party objects to a magistrate judge's report and recommendation, we conduct de novo review of the portions of the report to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Absent objections, we still give "reasoned consideration" to the remaining portions of the R&R. *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (quoting *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)). We may accept, reject, or modify the recommended disposition.

Our review of a state conviction on habeas corpus is circumscribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may not grant relief on a

claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Factual determinations by a state court are "presumed to be correct," and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. *Id.* § 2254(e)(1); *see Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000).

A state-court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state-court decision is an "unreasonable application" of federal law if the court correctly identifies the governing rule but applies it unreasonably to the facts of the case. *Id.* at 407-08. The standard is demanding: "an unreasonable application of federal law is different from an incorrect application of federal law," and relief is available only where the state court's decision was objectively unreasonable. *Id.* at 410-11; *see Werts*, 228 F.3d at 196.

Lewis's claims all allege ineffective assistance of counsel. Such claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a petitioner must show both that counsel's performance was constitutionally deficient and that the deficient performance prejudiced the defense. *Id.* at 687. Deficient performance means errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 688. Prejudice requires a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. *Id.* at 694. Counsel cannot be deemed ineffective for failing to raise a meritless argument. *See Real v. Shannon*, 600 F.3d 302, 310 (3d Cir. 2010).

Pennsylvania courts apply a three-part ineffectiveness standard requiring a petitioner to prove "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different." *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (citing *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011)); *see Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987). The Third Circuit has held that such a test is not contrary to *Strickland* but is substantively consistent with it. *See Werts*, 228 F.3d at 203-05.

## III.    Analysis

Lewis organizes his objections into four groups. First, he raises general objections to the R&R, challenging its use of AEDPA deference, the Pennsylvania courts' ineffective-assistance standard, and the denial of an evidentiary hearing. DI 24 at 2-6. Second, he objects to the recommended disposition of his first habeas claim, which alleged trial counsel was ineffective in relation to the self-defense jury instruction. *Id.* at 6-11. Third, he objects to the recommended disposition of his second habeas claim, which alleged trial counsel was ineffective for failing to request an involuntary manslaughter instruction. *Id.* at 11-15. Fourth, he objects to the recommended disposition of his third claim, which alleged appellate counsel was ineffective for failing to pursue a claim of prosecutorial misconduct in closing argument. *Id.* at 15-21.

Accordingly, we begin with Lewis's general objections, including his request for an evidentiary hearing and his challenges to the governing standards. We next turn to his objections

regarding his three substantive claims, addressing in order the self-defense instruction, the involuntary manslaughter instruction, and appellate counsel's handling of the prosecutor's closing remarks.

In addition to these objections, the R&R also discussed a threshold issue of timeliness under AEDPA's one-year statute of limitations, given the complex history of Lewis's PCRA proceedings and nunc pro tunc appeals. *See* DI 21 at 7-16; 28 U.S.C. § 2244(d)(1); *Martin v. Adm'r N.J. State Prison*, 23 F.4th 261, 271-72 (3d Cir. 2022). Judge Hey concluded that the petition was arguably untimely but elected to resolve the petition on the merits. Because timeliness was raised and addressed in the R&R, we will also give this issue reasoned consideration at the end of our analysis.

### A. General objections

#### 1. *Mr. Lewis is not entitled to an evidentiary hearing*

Mr. Lewis first objects that the R&R erred in recommending denial of his petition without an evidentiary hearing. He argues that both the state courts and the magistrate judge improperly resolved his ineffective-assistance claims without affording him an opportunity for "full and fair development of the facts," and he urges us to conduct an evidentiary hearing now. DI 24 at 2-3.

This objection fails for two reasons. First, to the extent Mr. Lewis challenges the lack of a state-court evidentiary hearing, AEDPA does not entitle him to federal relief merely because the state court declined to hold such a hearing. The statute limits our review to whether the state court's adjudication of his claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of

the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d). Nothing in AEDPA requires federal courts to reopen factual disputes whenever a state court has declined to hold an evidentiary hearing.

Second, Mr. Lewis has not shown that a hearing in this Court is warranted. Section 2254(e)(2) restricts evidentiary hearings in federal habeas proceedings. A petitioner who "failed to develop the factual basis of a claim in State court proceedings" may receive a hearing only if he demonstrates both diligence in attempting to present the facts earlier and that the new evidence would establish, by clear and convincing evidence, that no reasonable factfinder would have convicted him. 28 U.S.C. § 2254(e)(2); *see Cullen v. Pinholster*, 563 U.S. 170, 181-83 & n.4 (2011); *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022). Mr. Lewis identifies no such new evidence.

Moreover, the record before us is sufficient to decide his claims. The trial transcripts set forth the jury instructions he challenges, the Notes of Testimony preserve the prosecutor's closing remarks, and the Superior Court opinion and record provides full factual findings. Those materials fully frame the questions of whether counsel's performance was deficient and whether prejudice resulted. An evidentiary hearing would serve no purpose. *See Campbell v. Vaughn*, 209 F.3d 280, 285-89 (3d Cir. 2000) (holding no hearing required where PCHA court made the necessary factual findings, and petitioner did not show clear evidence that those factual findings were incorrect).

Accordingly, we find that no evidentiary hearing is necessary, either to remedy the state courts' refusal to conduct one or to develop the record in federal court. This objection is overruled.

## 2.  *Judge Hey used the correct ineffective-assistance standard*

Mr. Lewis next objects that the R&R erred in treating Pennsylvania's three-part ineffective-assistance standard as consistent with *Strickland*.  DI 24 at 3-5.  He argues that the state standard improperly requires petitioners to prove ineffectiveness "by a preponderance of the evidence" and adds an extra prong — that the underlying claim be of "arguable merit" — which he contends alters the federal standard.  DI 24 at 3-5.  He further argues that the "ultimate focus" of Pennsylvania's standard is on counsel, which differs from *Strickland*'s focus on the fairness of the proceeding.  *Id.* at 5.

This objection is unavailing.  The Third Circuit has long held that Pennsylvania's formulation of the ineffective-assistance test does not conflict with *Strickland*.  *See Werts*, 228 F.3d at 203; *Rippey v. Gourley*, No. 24-1694, 2025 WL 1770506, at *5 (M.D. Pa. June 26, 2025) ("Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law is substantively consistent with the standard set forth in *Strickland*." (citing *Pierce*, 527 A.2d at 976)).   The first two prongs in the Pennsylvania standard mirror the first *Strickland* prong.  The "arguable merit" prong is simply a restatement of *Strickland*'s requirement that the underlying claim must be meritorious for counsel's performance to be deemed deficient, and the "reasonable basis" prong mirrors *Strickland*'s performance requirement that counsel's acts or omissions fall below an objective standard of reasonableness.

Mr. Lewis also challenges the state courts' reference to a preponderance standard.  But as the Supreme Court clarified in *Williams*, such an error would be in applying a heightened standard to the prejudice prong — requiring a petitioner to prove prejudice by a preponderance

rather than by showing a "reasonable probability" of a different outcome. 529 U.S. at 406-07. The Pennsylvania courts did not apply such a heightened prejudice standard here. Rather, they evaluated whether Mr. Lewis demonstrated a reasonable probability that counsel's alleged errors affected the verdict, consistent with *Strickland*.

Furthermore, Judge Hey in her R&R applied the correct federal standard, and found that nothing in the state courts' analysis was contrary to, or an unreasonable application of, clearly established Supreme Court law. Mr. Lewis does not argue that R&R's review was incorrect. Accordingly, Mr. Lewis's objection to the use of the Pennsylvania standard is without merit and will be overruled.

### 3. AEDPA deference is constitutional

Mr. Lewis also objects that application of the deferential standard of review under 28 U.S.C. § 2254(d) to his ineffective-assistance claims is unconstitutional. He contends that deference to state-court adjudications does not align with the principles espoused in *Strickland* and that we should conduct de novo review of his federal constitutional claims. *See* DI 24 at 7.

This objection lacks merit. Congress enacted AEDPA to restrict the circumstances under which federal courts may grant habeas relief, and the Supreme Court has consistently upheld § 2254(d)'s deferential standard as constitutionally valid. *See, e.g., Williams*, 529 U.S. at 402-13 (interpreting and applying § 2254(d)); *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction." (quotation omitted)). The Third Circuit has likewise applied AEDPA deference as controlling law. *See, e.g., Werts*, 228 F.3d at 196-97.

Although Mr. Lewis disagrees with the statutory scheme, his argument is foreclosed by binding precedent.  We therefore overrule this objection.

### B.  Self-defense instruction

Mr. Lewis raises several objections to the R&R's conclusion that trial counsel was not ineffective for failing to object to the self-defense instructions.  He argues: (1) the R&R evaluated the instructions "in isolation" rather than as a whole; (2) the trial court erred by failing to specify in the self-defense and transferred intent instructions the victims to whom the doctrines applied; (3) the R&R mischaracterized the charge by stating the trial court "reiterated" the self-defense instruction before addressing aggravated assault; (4) the instructions remained unclear even if technically correct; and (5) the R&R failed to consider how he was prejudiced. *See* DI 24 at 6-11.

These objections are unavailing, and Mr. Lewis has failed to demonstrate how the Superior Court's disposition of this claim was unreasonable.  Jury instructions must be evaluated in their entirety, not "in artificial isolation."  *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). Here, the trial court expressly instructed the jury that "self-defense, if justifiable, is a complete defense to the charges of murder and aggravated assault," and explained that the Commonwealth bore the burden of disproving self-defense beyond a reasonable doubt.  DI 17-10 at 11–12 (N.T. 1/16/2009 at 37-38, 41-42). The court reminded the jury of the concept before defining aggravated assault, and explained how self-defense relates to malice, an element common to both murder and aggravated assault.  *Id.* at 12-14 (N.T. 1/16/2009 at 44-45, 47-50); *see Commonwealth v. Packer*, 168 A.3d 161, 168-69 (2017).  Taken as a whole, the charge fairly and accurately conveyed the governing law.

Mr. Lewis's argument that the instructions failed to identify by name the relevant victims is waived because it was not raised in his habeas petition or amended petition and not presented to Judge Hey. *See* DI 2 at 18-25; DI 5 at 20; L.R. Civ. P. 72.1(IV)(c); *Jimenez v. Barnhart*, 46 F. App'x 684, 685 (3d Cir. 2002) (declining to consider new arguments raised for the first time in objections to an R&R). Regardless, it also lacks merit. The jury was told that self-defense applied to all charges, and the instructions consistently referred to Mr. Johnson as the deceased victim. DI 17-10 at 12-13. Specific references to victim names in the transferred intent instruction were unnecessary; the jury knew from the evidence who the victims were, and the law was accurately stated.

Nor did the R&R mischaracterize the record. The transcript reflects that the trial court did reiterate the principle of self-defense before defining aggravated assault. DI 17-10 at 13-14. This statement reinforced that self-defense was applicable to both charges.

Mr. Lewis also argues that the instructions remained confusing, but this stems from his misunderstanding of Pennsylvania law. Imperfect self-defense mitigates murder to voluntary manslaughter by negating malice, but it does not excuse an intentional assault on a surviving victim. *See Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. Ct. 2012). In other words, an unreasonable belief that an act was in self-defense may by relevant to a potential murder charge but has no effect on an aggravated assault charge based on intentional acts. The jury could therefore conclude that he acted under an unreasonable belief in the need for deadly force when he shot at Mr. Ingram, supporting aggravated assault, and that the same gunfire killed Mr. Johnson, supporting voluntary manslaughter under transferred intent. The instructions made this clear. Because the instructions correctly stated the law, trial counsel was not deficient for failing

to object. *See Strickland*, 466 U.S. at 687-88.

The R&R properly stopped after considering the performance prong, as this ends the analysis, and we need not consider prejudice. *Id.* at 697; *United States v. Travillion*, 759 F.3d 281, 294 (3d Cir. 2014) ("There is no reason for a court deciding an ineffective assistance claim even to address both components of the inquiry if the defendant makes an insufficient showing on one." (citation modified) (quoting *Marshall v. Hendricks*, 307 F.3d 36, 86-87 (3d Cir. 2002))). Moreover, even if we were to consider prejudice, Mr. Lewis has not shown a reasonable probability that clearer instructions would have altered the verdict. The convictions for voluntary manslaughter and aggravated assault are consistent with Pennsylvania self-defense law.

Accordingly, finding that the self-defense instructions were proper, and that trial counsel was not ineffective for not objecting, all of Mr. Lewis's objections to this claim are overruled. We therefore adopt the portion of the R&R dealing with this claim.

### C. Involuntary manslaughter instruction

Mr. Lewis raises four specific objections to the R&R concerning the trial court's failure to instruct the jury on involuntary manslaughter. He argues that: (1) the jury could have found that while he intentionally shot at Mr. Ingram, he acted recklessly toward Mr. Johnson, and that the absence of an involuntary manslaughter charge prevented consideration of this mixed mental-state theory; (2) the line between involuntary and voluntary manslaughter is narrow and that the jury should have been permitted to choose between them; (3) trial counsel's failure to request the charge reflected ignorance of Pennsylvania law; and (5) the omission prejudiced him because at least one juror might have opted for involuntary manslaughter rather than voluntary

manslaughter.  DI 24 at 12-15.

All of these objections fail for the same reason: the record contains no evidence that would support an involuntary manslaughter instruction.  Under Pennsylvania law, such an instruction is warranted only if the evidence, viewed in the light most favorable to the defendant, would support a finding that the killing was the result of reckless or grossly negligent conduct rather than intentional conduct.  *See Commonwealth v. Soltis*, 687 A.2d 1139, 1141-42 (Pa. Super. 1996); *Commonwealth v. White*, 415 A.2d 399, 402 (Pa. 1980).  By contrast, a voluntary manslaughter instruction under 18 Pa. Cons. Stat. § 2503(b) is appropriate where a defendant intentionally uses deadly force under an unreasonable belief that such force is necessary for self-defense.  *See Truong*, 36 A.3d at 599.

Here, as the Superior Court explained, the evidence showed that Mr. Lewis deliberately aimed and fired his handgun at Mr. Ingram, striking both Mr. Ingram and Mr. Johnson.  *See Lewis*, 2022 WL 1132620, at *7.  Multiple eyewitnesses testified to his intentional conduct.  *See* DI 17-4 at 43-53 (ECF) (N.T. Trial, 1/13/09, at 167-208); DI 17-2 at 3-20 (ECF) (N.T. Trial, 1/14/09, at 9-75).  Nothing in the record suggested that Mr. Lewis negligently or recklessly discharged his weapon.  Thus, while the jury reasonably convicted Mr. Lewis of voluntary manslaughter under an unreasonable-belief self-defense theory, there was no evidentiary basis for a verdict of involuntary manslaughter.

Because the evidence did not support the instruction, trial counsel could not be deemed ineffective for failing to request it.  *See Real*, 600 F.3d at 309 ("Counsel cannot be deemed ineffective for failing to raise a meritless claim.").  Nor can Mr. Lewis show prejudice: there is no reasonable probability that the outcome would have been different had the jury been given an

option the evidence did not support.  *Strickland*, 466 U.S. at 694.

Accordingly, we agree with the Superior Court's conclusion that the involuntary manslaughter charge was unwarranted and that trial counsel was not ineffective for failing to pursue it.  All of Mr. Lewis's objections relating to this claim are overruled and we adopt the portion of the R&R addressing this claim.

### D.  Prosecutor's Closing Argument

Mr. Lewis raises five objections to the R&R's treatment of his third claim, which alleged that appellate counsel was ineffective for failing to challenge the trial court's handling of the prosecutor's closing remarks.  Specifically, he argues: (1) an evidentiary hearing is necessary to determine whether the prosecutor's explanation was misleading; (2) there was testimony from the absent witnesses showing that there was no "bad blood" between Mr. Lewis and Mr. Ingram; (3) the R&R understated the prejudicial impact of the remarks because they were not a fair response but rather a form vouching; (4) appellate counsel was independently ineffective for failing to brief the issue on direct appeal; and (5) the jury's lengthy deliberations show that the prosecutor's comments may have influenced the verdict.  *See* DI 24 at 15-20.

As Judge Hey noted in the R&R, the Superior Court's decision rested on an erroneous recounting of the record, including misstatements about what the prosecutor said in his opening and about the identity of the unavailable witness.  *See* DI 21 at 31-33.  Mr. Lewis does not object to this characterization and resulting standard of review, and, because we agree with Judge Hey that the Superior Court's adjudication was based on an unreasonable determination of the facts, we therefore review this issue de novo and do not give deference to the Superior Court's determination.  *See Panetti v. Quarterman*, 551 U.S. 930, 953 (2007); *Wiggins v. Smith*, 539 U.S.

14

510, 531 (2003).

In line with our analysis of Mr. Lewis's general objections above, Mr. Lewis's objection requesting an evidentiary hearing fails. Habeas review proceeds on the record before the state courts, and new factual development is sharply limited. *See* 28 U.S.C. § 2254(e)(2); *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). The prosecutor's comments are preserved in the transcript, and whether they were improper is a legal question resolvable without additional evidence. An evidentiary hearing could not alter the record of what was said or the context in which it was said, and Mr. Lewis does not identify any additional useful evidence that could come from an evidentiary hearing.

The trial record establishes the context of the challenged comments. The challenged remarks arose after defense counsel argued in closing that the Commonwealth had promised but failed to produce motive evidence. N.T. 1/15/09 at 265. In rebuttal, the prosecutor acknowledged that he had "every intention" of presenting motive testimony but lacked witnesses to do so, and reminded the jury that motive was not an element the Commonwealth was required to prove. *Id.* at 321–23. The trial court overruled defense counsel's objection, deeming the comments a fair response. *Id.* at 321.

We find that the prosecutor's remarks were not improper. Prosecutorial comments must be assessed in context, and they warrant relief only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Where remarks are a fair response to arguments raised by defense counsel, they are not improper. *See e.g.*, *United States v. Robinson*, 485 U.S. 25, 31-32 (1988); *Commonwealth v. Copenhefer*, 719 A.2d 242, 251-52 (Pa. 1998). That is what occurred here.

15

Defense counsel argued in closing that the Commonwealth had promised motive evidence but failed to produce it.  *See* DI 17-3 at 68 (ECF) (N.T. 1/15/09 at 265).  And in rebuttal, the prosecutor acknowledged that he had "every intention" of calling such witnesses but could not, and reminded the jury that motive is not an element of the offense.  *Id.* at 82 (ECF) (N.T. 1/15/09 at 321-23).  The trial court overruled counsel's objection, finding the comment a fair response. *See id.*  Far from vouching, the prosecutor's concession highlighted a weakness in the Commonwealth's proof and emphasized the limited relevance of motive under the governing law.

Mr. Lewis contends that the remark was misleading because testimony from the missing witnesses would have shown that he and Mr. Ingram had reconciled or remained friends.  *See* DI 24 at 16-18.  This argument is unpersuasive.  The prosecutor did not attempt to prove motive or represent that corroborating evidence existed; rather, he admitted its absence.  *See* DI 17-3 at 82 (ECF) (N.T. 1/15/09 at 321-22).  Moreover, the trial court acknowledged and considered the testimony on which Mr. Lewis relies in its ruling on the objection.  *See* DI 17-3 at 86-87 (N.T. 1/15/09 at 338-43) ("Cynthia Johnson, another witness who neither counsel or I had an opportunity to call in this case because of what happened with her, clearly is a witness who in her statement mentions the motive, describes in fact when she was present hearing Omar Ingram make a statement to the defendant Julmal Lewis along the lines of like, man, that's old news, you know, my cousin is dead, your peeps are in jail for this, and it's over.").  And that testimony itself reflects that a conflict did exist between Mr. Lewis and Mr. Ingram sometime prior to the shooting.  *See id.*; DI 24 at 32 (ECF).  Thus, the trial court's determination that the prosecutor's comment was a fair response was not error.  Because the misconduct claim itself lacks merit,

16

appellate counsel was not ineffective for failing to pursue it. *See Real*, 600 F.3d at 309.

Because we find that the performance prong is not satisfied for this claim, we need not address prejudice. *Strickland*, 466 U.S. at 697; *Travillion*, 759 F.3d at 294. However, for completeness, we also find that Mr. Lewis has not demonstrated prejudice. The jury acquitted him of murder and convicted him of voluntary manslaughter and aggravated assault, consistent with an imperfect self-defense theory. If the jury credited the "bad blood" motive theory, it would make a finding of malice or justifiable self-defense more likely. Thus, the verdict itself is evidence that the jury was not misled by the prosecutor's statements. The fact that the jury deliberated at length does not alter this conclusion; a close case does not transform a single permissible rebuttal into a due process violation. *See Donnelly*, 416 U.S. at 646-47 ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.").

Accordingly, we conclude that Mr. Lewis has not demonstrated either prosecutorial misconduct or ineffective assistance of appellate counsel. All of his objections relating to the prosecutor's closing remarks are overruled. We therefore adopt the R&R's reasoning and conclusions related to the claim involving the prosecutor's closing argument.

### E. Timeliness Considerations

Although Mr. Lewis has not objected to the R&R's discussion of timeliness, we give the issue reasoned consideration. AEDPA imposes a one-year statute of limitations for habeas petitions, which is tolled during the pendency of "a properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(1)-(2).

Here, the Pennsylvania Superior Court denied Mr. Lewis's PCRA appeal on April 18, 2022.  *See* DI 21 at 11.  Under Pennsylvania Rule of Appellate Procedure 1113(a), he had thirty days — until May 18, 2022 — to seek allowance of appeal in the Pennsylvania Supreme Court. *See id.*  Mr. Lewis did not file by that deadline; instead, he filed one day late, on May 19, 2022. *See id.*  He was later granted permission to proceed nunc pro tunc, and the Pennsylvania Supreme Court ultimately denied his petition on May 26, 2023.  *See id.* at 11-12.

In *Martin v. Administrator New Jersey State Prison*, 23 F.4th 261 (3d Cir. 2022), the Third Circuit held that AEDPA tolling ceases once the time to file a timely appeal expires, even if a state court later accepts an out-of-time appeal "as within time."  *Id.* at 270-72.  Applying *Martin* strictly, Mr. Lewis's limitations period would have resumed running on May 19, 2022, and his federal petition — filed May 26, 2023 — would be untimely by roughly one month.  *See* DI 21 at 12 & n.14.

At the same time, *Martin* did not resolve whether tolling may restart once a state court affirmatively grants a nunc pro tunc appeal, as occurred here when the Pennsylvania Supreme Court allowed Mr. Lewis to file out of time in December 2022.  *See id.*  Judge Hey therefore assumed arguendo that the petition was timely and proceeded to the merits.  See DI 21 at 16.

Agreeing with Judge Hey, we adopt her reasoning and conclusion on this point.  The timeliness of Mr. Lewis's petition is, at best, uncertain under *Martin*, and there is a strong argument that the petition is untimely.  But because the petition fails on the merits, we, like Judge Hey, choose not to resolve the limitations question here.

## IV.    Conclusion

For the foregoing reasons, we overrule all of Mr. Lewis's objections to the R&R.  We

adopt Judge Hey's well-reasoned analysis, including her conclusion that the petition fails on the merits and her recognition that the petition may also be untimely under *Martin*.  Because Mr. Lewis has not shown deficient performance or prejudice under *Strickland* on any of his claims, habeas relief is not warranted.

Accordingly, we will adopt the R&R in full and deny the petition for a writ of habeas corpus with prejudice.  In addition, because Mr. Lewis has not made a substantial showing of the denial of a constitutional right, no certificate of appealability will issue.  *See* 28 U.S.C. § 2253(c)(2).

An appropriate order follows.

19